UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ROBIN LAROSE, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 23-cv-11963-ADB |
| | * | |
| MARTIN O'MALLEY, | * | |
| Commissioner of the Social Security | * | |
| Administration, | * | |
| | * | |
| Defendant. | * | |

**<u>MEMORANDUM AND ORDER</u>**

BURROUGHS, D.J.

Plaintiff Robin LaRose ("Plaintiff") brings this action pursuant to § 405(g) of the Social Security Act, 42 U.S.C. § 405(g), challenging the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for Title XVI Supplemental Security Income ("SSI"). Currently pending are Plaintiff's motion to reverse the administrative law judge's ("ALJ") August 17, 2022 decision, [ECF No. 11], and the Commissioner's cross-motion to affirm the ALJ's decision denying SSI benefits, [ECF No. 16]. For the reasons set forth below, Plaintiff's motion is <u>GRANTED IN PART</u> and <u>DENIED IN PART</u>, and the Commissioner's motion to affirm is <u>GRANTED IN PART</u> and <u>DENIED IN PART</u>.

I.      **BACKGROUND**

   A.      **Statutory and Regulatory Framework:  Five-Step Process to Evaluate Disability Claims**

   "The Social Security Administration is the federal agency charged with administering both the Social Security disability benefits program, which provides disability insurance for covered workers, and the Supplemental Security Income program, which provides assistance for the indigent[,] aged and disabled."  *Seavey v. Barnhart*, 276 F.3d 1, 5 (1st Cir. 2001) (citing 42 U.S.C. §§ 423, 1381a).

   The Social Security Act (or the "Act") provides that an individual shall be considered to be "disabled" if he or she is:

> unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 1382c(a)(3)(A); *see also* 42 U.S.C. § 423(d)(1)(A).  The disability must be severe, such that the claimant is unable to do his or her previous work or any other substantial gainful activity that exists in the national economy.  *See* 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905.

   When evaluating a disability claim under the Act, the Commissioner uses a five-step process, which the First Circuit has explained as follows:

> All five steps are not applied to every applicant, as the determination may be concluded at any step along the process.  The steps are: 1) if the applicant is engaged in substantial gainful work activity, the application is denied; 2) if the applicant does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the applicant's "residual functional capacity" [RFC] is such that he or she can still perform past relevant work, then the

2

application is denied; 5) if the applicant, given his or her [RFC], education, work experience, and age, is unable to do any other work, the application is granted.

*Seavey*, 276 F.3d at 5 (citing 20 C.F.R. § 416.920).

Plaintiff has the burden of proof through step four of the analysis, including the burden to demonstrate RFC.  *See Flaherty v. Astrue*, No. 11-cv-11156, 2013 WL 4784419, at *8–9 (D. Mass. Sept. 5, 2013).  At step five, the Acting Commissioner has the burden of showing the existence of jobs in the national economy that Plaintiff can perform notwithstanding her restrictions and limitations.  *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 7 (1st Cir. 1982).

###    B.    Procedural Background

On August 10, 2020, Plaintiff applied for SSI benefits, asserting a May 21, 2020 onset date, which she subsequently amended to an onset date of August 10, 2020, the date of her application.[1]  [R. 177–86, 16, 38].[2]  The Social Security Administration ("SSA") denied Plaintiff's application initially on June 4, 2021, and, on reconsideration, on January 13, 2022.

---

[1] References to pages in the Administrative Record, which was filed electronically at ECF No. 8, are cited as "[R.___]."

[2] Plaintiff previously filed for SSI and DIB benefits in April 2017, and again for SSI benefits in October 2018.  *See* [R. 63, 82].  Those claims were denied by two different ALJs in August 2018 and June 2020.  [R. 63–74, 82–91].  It does not appear that Plaintiff sought judicial review of either the 2018 or 2020 denials.  Instead, Plaintiff filed her third and subsequent application for SSI benefits in August 2020—the application currently at issue on appeal.  [R. 177–86].  Plaintiff did not ask that the prior applications be reopened; nor did the current ALJ address reopening in his August 2022 written decision.  *See* [R. 38–39, 16–26].

Accordingly, the relevant time period for the SSI application at issue here was August 10, 2020, through the ALJ's August 17, 2022 decision.  *See* 20 C.F.R. § 416.335 (SSI benefits are not retroactive to the date of disability onset, but are payable one month following the month in which the application was filed, which, in this case, would have been September 2020).

3

[R. 97–125]. Plaintiff subsequently requested a hearing, which Administrative Law Judge ("ALJ"), Alexander Klibaner, held on July 25, 2022. [R. 33–57]. In an August 17, 2022 written decision, the ALJ found Plaintiff not disabled. [R. 16–26]. The Appeals Council denied Plaintiff's request for review of the ALJ's decision on June 21, 2023. [R. 1–7]. Having exhausted her administrative remedies, Plaintiff filed the instant complaint with this Court on August 24, 2023, seeking review of the Commissioner's final decision pursuant to section 405(g). [ECF No. 1].

### C.     Factual Background

Plaintiff was fifty-three years old at the time of her August 2020 onset date. [R. 25–26]. She had previously completed her GED, along with one year of nursing training, after which she obtained her nursing license ("LPN"). [R. 40, 279]. Plaintiff worked in long-term care as a nurse, case manager, and coordinator from approximately 1989–2012. [R. 209, 40–42]. She most recently attempted to work as a taxi driver in 2021, but quit after a panic attack on her second day of work. [R. 43].

### D.     Relevant Medical Evidence

Plaintiff asserts both physical and mental impairments. The relevant medical evidence is as follows:

#### 1.     *Plaintiff's Mental Impairments and Limitations*

Plaintiff has suffered from recurrent depression since approximately 2008 or 2009—more than ten years prior to the relevant period in this case. [R. 278, 281]. Plaintiff has received therapy and psychiatric treatment, including various medications, for her mental impairments on and off since approximately 2011. [R. 278, 281].

In 2019, approximately one year prior to the relevant time period, Plaintiff's treating therapist, Chelsey Adams, and psychiatrist, Dr. Ethan Kisch, completed a check-box form, diagnosing Plaintiff with bipolar disorder I, social anxiety disorder, and agoraphobia.  [R. 385].  They opined that because of her mental impairments, Plaintiff suffered from moderate functional limitations in her activities of daily living ("ADL") and social functioning, and extreme limitations in maintaining concentration, persistence, or pace.  [R. 394].  Therapist Adams added that as a result of Plaintiff's mental impairments, it was "extremely difficult" for her "to leave home" or to "interact with others within the community."  [R. 396].

Subsequently, in 2021, non-examining state agency psychologist, Dr. Nancy Keuthen, reviewed Plaintiff's medical records and the opinions regarding her mental impairments, and diagnosed severe depression, bipolar and related disorder, and severe anxiety disorder.  [R. 120].  Dr. Keuthen opined that Plaintiff's mental impairments resulted in no limitations in her abilities to understand, remember, or apply information, or to adapt or manage herself.  [R. 122].  Dr. Keuthen, however, opined that Plaintiff suffered from moderate functional limitations in her abilities to concentrate, persist and interact socially.  [R. 122].  In support, Dr. Keuthen noted that while Plaintiff's "[r]ecent MSEs [(mental status examinations)] indicate[d] down and anxious mood," she had a "full range affect[] and intact memory and fair attention/concentration."  [R. 122].  Additionally, Dr. Keuthen noted that Plaintiff "manages [her] self-care, cooks basic food, does some chores, and goes outside [two to three times] weekly (including the pharmacy to get prescriptions filled)."  [R. 122].

Regarding Plaintiff's RFC, Dr. Keuthen opined that Plaintiff was able to "attend to work tasks in a setting requiring limited interpersonal interaction and without stringent time limits on task performance[,]" and that "[s]he may miss occasional days of work within SGA parameters."

[R. 122]. Dr. Keuthen further opined that while Plaintiff "is socially withdrawn," she "could manage infrequent, superficial public contact[,]" and "would do best in a more independent role as she could distract co-workers given her anxiety." [R. 122].

### 2.    *Plaintiff's Physical Impairments and Limitations*

Around May or June 2021, a little less than one year after Plaintiff filed the instant SSI claim, Plaintiff fell and injured her back and ribs. [R. 595–98 (reporting to Nurse Practitioner ("NP") Jennifer Porter on September 9, 2021, that she fell during the summer 2021, after her dog wrapped his leash around her feet); R. 588–94 (During her September 20, 2021 annual examination with her primary care physician ("PCP") Dr. Kevin Delahanty, Plaintiff reported left-sided radicular pain related to a fall.)].

Plaintiff first sought treatment for the injury from her chiropractor, Dr. Belinda Marcil, in July 2021. [R. 650]. Dr. Marcil noted that Plaintiff's chief complaint was low back pain, which Plaintiff reported had increased after her recent fall. [R. 650]. Dr. Marcil additionally noted that Plaintiff reported her pain was between 6/10 and 10/10, but that Plaintiff experienced "improvement as indicated by [that day's] subjective and objective findings." [R. 651]. At that time, in July 2021, Dr. Marcil stated that Plaintiff's treatment was "projected to be completed by" August 16, 2021, and that she was "expected to make good progress and recovery with few residuals." [R. 651].

Dr. Marcil subsequently extended Plaintiff's treatment for her back injury numerous times, such that treatment was ultimately projected to last through December 24, 2022—a date that post-dated the ALJ's July 2022 hearing and August 2022 decision. [R. 885]. Thus, Plaintiff appears to have continued to see Dr. Marcil regularly through the time of her July 25, 2022

hearing, and perhaps longer. [3]  *See* [R. 46 (Plaintiff testifies that she cannot "do without" the chiropractic treatment for her back, noting that she was still seeing her chiropractor at the time of the July 2022 hearing)].

On August 30, 2021, Plaintiff subsequently sought medical treatment from an urgent care facility for the injuries related to her fall.[4]  Urgent care records show that Plaintiff similarly reported she injured herself in "a fall while walking her dog" that summer, and that while she had started seeing a chiropractor in July 2021, she continued to experience pain.  [R. 826–27].  Urgent care staff performed an x-ray, which was negative "for any acute displaced rib fracture."  [R. 829, 717 ("Oblique views of the left ribs demonstrate no discernible displaced fracture.")].  NP Chelsea Manzone diagnosed a "contusion," recommended Motrin and Lidoderm pain patches for the pain, and suggested Plaintiff follow up with her PCP in one week for a CT scan if her injury did not improve.  [R. 829–30].

Less than two weeks later, on September 9, 2020, Plaintiff was seen by NP Porter from the Southcoast Physicians Group for "continued left upper quadrant/rib pain."  [R. 595].  Plaintiff reported to NP Porter that approximately two to three months prior to that visit, her "dog wrapped his [leash] around her feet and she fell straight onto her back."  [R. 595].  Plaintiff advised NP Porter that because she has "chronic back pain," she first went to see her

_____

[3] The administrative record contains Dr. Marcil's records through May 24, 2022.  [R. 650–720, 851–88].  Plaintiff's testimony, however, along with Dr. Marcil's extension of the treatment completion date, suggest that Plaintiff continued to see Dr. Marcil beyond May 2022.  [R. 46, 885].

[4] At that time, Plaintiff had already seen her chiropractor one to two times per week since July 16, 2021.  [R. 650–78].  During those six weeks of semi-weekly chiropractor visits, Plaintiff reported that her pain had improved to a 2/10, and Dr. Marcil extended treatment through October 17, 2021.  [R. 653, 656, 659, 662, 665, 668, 671, 674, 675].

chiropractor, and that her chiropractor had advised her "to get the pain checked out with a CT scan or MRI."  [R. 595].  Plaintiff noted that she had also been seen by an urgent care facility in August 2021 for her injuries, where she had an x-ray and received pain patches.  [R. 595, 826–30 (August 30, 2021 urgent care records)].  Despite the pain patches and Motrin, Plaintiff reported to NP Porter that her pain—which she described as a "deep tearing or pressure" —had been getting worse.  [R. 595].

During that September 9, 2021 visit, NP Porter observed that Plaintiff was not in acute distress, did not have any swelling or spasms, and had a normal range of motion, but that she was positive for tenderness and back pain.  [R. 596–97].  NP Porter diagnosed "[c]ontinuous LUQ [(left upper quadrant)] abdominal pain," ordered labs "to rule out any abdominal abnormalities[,]" and also ordered a CT scan.  [R. 598 (noting that Plaintiff was "adamant that she want[ed] a CT or MRI done as her chiropractor w[ould] no longer work on her back without further imaging")].  NP Porter declined to order an MRI at the time.  [R. 598].

Plaintiff had labs drawn and a CT scan the same day, September 9, 2021.  [R. 598–603].  The CT scan showed that Plaintiff's "[i]maged lower ribs appear[ed] intact," and there were "[n]o acute skeletal abnormalities noted."  [R. 602].

Soon thereafter, on September 20, 2021, Plaintiff saw her PCP, Dr. Delahanty, for an annual physical exam.  [R. 588–90].  Plaintiff reported to Dr. Delahanty that she had been experiencing left side rib and back pain for approximately six to eight weeks.  [R. 588].  Dr. Delahanty observed that Plaintiff had back pain, but no "joint swelling," "tenderness, deformity or signs of injury, and had [a] [n]ormal range of motion."  [R. 588, 590].  Dr. Delahanty further observed that Plaintiff's "[s]pine [was] midline with preservation of normal curvatures[,] [n]o point of paraspinal tenderness[,] [and n]o costovertebral tenderness."  [R. 590].  Dr. Delahanty

ultimately diagnosed "[r]adicular pain of thoracic region," and renewed Plaintiff's ibuprofen prescription and ordered an MRI.  [R. 591].

Plaintiff twice attempted to undergo the ordered MRI in October and November 2021, but was unable to complete the MRI due to claustrophobia and anxiety.  [R. 594, 713, 851–52].  Accordingly, there is no MRI imaging in the record.

Following the failed MRI attempts, Plaintiff continued to treat her rib and back pain with her chiropractor through the time of the July 2022 hearing.  [R. 45–46, 713–20, 851–88].  During that time period, in December 2021, non-examining state agency consultant, Dr. John Jao, reviewed Plaintiff's medical records and opined on reconsideration regarding the functional limitations associated with her physical impairments.[5]  [R. 119].  He noted that Plaintiff suffered from "neck and back discomfort after a fall[,]" which was "[t]reated by [a] chiropract[or] for mild symptom[s]."  [R. 119].  Dr. Jao further noted that Plaintiff underwent an "unrevealing CT scan."  [R. 119].  He opined that, physically, Plaintiff suffered from "[n]o [medically determinable impairment or] MDI beyond strain and sprain."  [R. 119].

While Plaintiff continued to report to her chiropractor that her pain was improving through late 2021 and into 2022, Plaintiff nevertheless also continued to complain to Dr. Marcil of upper quadrant pain, lower left lumbar pain, achiness, and sore ribs.  *See, e.g.,* [R. 863, 878].  Accordingly, in January 2022, Dr. Marcil recommended that Plaintiff see Dr. Delahanty for another CT scan.  [R. 863].  There is no record evidence suggesting that Plaintiff received a

---

[5] Other than Dr. Jao's opinion, the record does not contain (and, thus, the ALJ did not have) any other opinions regarding Plaintiff's back and rib pain.  Because the first non-examining state agency physician, Dr. R. McFee, issued her opinion on initial review in December 2020—prior to Plaintiff's summer 2021 injury—Dr. McFee did not address Plaintiff's back and rib pain.  *See* [R. 106–07].

subsequent CT scan around that time.  *See* [R. 851–88].  Instead, the record simply reflects that

Plaintiff continued her treatment with Dr. Marcil through the time of her hearing.  *See* [R. 885].

Additionally, Plaintiff, in June 2022, complained to her therapist about "debilitating back pain."

[R. 1030].

Approximately two months after the ALJ hearing and one month after the ALJ's decision

denying benefits, on September 30, 2022, Plaintiff underwent x-rays of her lumbar spine,

sacrum, and coccyx, as ordered by her PCP, Dr. Delahanty.  [R. 58–59].  The x-rays revealed "no

lucent fracture line[s]."  [R. 58–59].  They did, however, suggest "curvature" in Plaintiff's lower

thoracic and lumbar spine, and reveal "[c]hanges of multilevel lumbar spondylosis[,]" "[s]ubtle

left lateral subluxation [of] L4 on L5[,]" "subtle retrolisthesis," and a "subtle anterior wedging

L1 vertebral body" that "could relate to anatomic variants versus age-indeterminate compression

fracture deformity."[6]  [R. 58–59].

### E.    Plaintiff's Statements and Testimony

#### 1.    *Mental Impairments*

In her August 26, 2020 function report, Plaintiff reported that she suffers from anxiety,

bipolar disorder, and depression.  [R. 246, 248, 250].  She asserted that as a result of these mental

impairments, she has trouble with her memory, concentration, completing tasks, following

instructions, and getting along with others.  [R. 248].  She noted that she lives with her parents,

and that, on a typical day, she watches television, drinks coffee, and lets her dog out.  [R. 243].

She is able to prepare basic meals and do household chores, care for herself and her pet, pay her

---

[6] Plaintiff submitted the September 2022 x-ray results to the Appeals Council, which
nevertheless denied review.  [R. 1–2, 58–59].

bills and otherwise tend to her finances, and fill her prescriptions, with assistance.  [R. 245–47].

She reported that she often isolates because she experiences social anxiety, which can prevent

her from leaving the house and makes her fearful of people.  [R. 248–49].  According to

Plaintiff, she does not handle stress well, and she does not get along well with authority figures.

[R. 249].

At the subsequent July 2022 hearing, Plaintiff testified similarly regarding her daily

activities.  [R. 48–50].  She noted that since she filed for SSI benefits in August 2020, she had

attempted to work as a taxi driver.  [R. 43–44].  Plaintiff, however, panicked and quit on the

second day.  [R. 43–44].  She also noted that she had attempted to volunteer at a soup kitchen but

that she did not get along with people there.  [R. 44–45].

Plaintiff further testified that she experiences panic attacks, which are often triggered by

crowds, approximately two times per week.  [R. 51].  Nevertheless, she occasionally grocery

shops, and she will often do the "pick up thing."  [R. 48].  She said that she had last grocery

shopped approximately one month prior to the July 2022 hearing, and that it "wasn't bad," but

that she had to take medication prior to going out to "calm down."  [R. 48].

## 2. *Physical Impairments*

In her August 26, 2020 function report, completed days after Plaintiff filed her August

2020 SSI claim at issue here, Plaintiff reported that she experienced "joint discomfort," which

impacted her ability to squat, reach, and kneel.  [R. 248].  Plaintiff, however, did not elaborate

any further regarding her physical impairments.  *See* [R. 243–48].

At the July 2022 hearing, Plaintiff testified that she "threw [her] back out" volunteering

at a food pantry after lifting "something, like, a case of food" up onto a counter.  [R. 45].  She

testified that injury occurred in 2021, and that she began seeing a chiropractor at that time.  [R.

45 (noting that she is "terrible at timeframes")].  She stated that her chiropractor typically performs subluxation and provides exercises to strengthen her back.  [R. 46].  Plaintiff further averred that she has gone to the chiropractor anywhere from twice per week to once every few weeks, and that she was continuing to see her at the time of the hearing.  [R. 46].

Plaintiff elaborated that she experiences back and neck pain on a regular basis, for which she takes Motrin three times a day and does the stretches and exercises that her chiropractor gives her.  [R. 50].  She testified that she is unable to lift any more than five pounds because her back "twinges."  [R. 52].  She added that her back impairment causes her to limp, and that she generally "feels like my lower back is separate from the rest of me."  [R. 52].

Plaintiff's counsel argued at the hearing that, due to her back impairment, Plaintiff is unable to sit and stand and/or walk for long periods of time without having to get up and adjust. [R. 39].  As a result, counsel contended she would "be off task [for] more [time] than is allowable."  [R. 39].

### F.    ALJ's Decision

On August 17, 2022, the ALJ issued a decision finding that Plaintiff was not disabled under the Act.  [R. 16–26].  Applying the five-step sequential evaluation process for determining whether an individual is disabled, at step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her August 10, 2020 application date.  [R. 18].

At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: depressive, bipolar, and dysthymic disorder, and anxiety disorder with agoraphobia

and panic.  [R. 18].  The ALJ also found at step two that Plaintiff's back and rib impairment was not severe.[7]  [R. 19].

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of a listed impairment, specifically considering Listings 12.04 (depressive disorder) and 12.06 (anxiety and obsessive-compulsive disorders).  [R. 19–21].

In so finding, the ALJ addressed whether the paragraph B criteria for the above listings were satisfied.  [R. 19–21].  The ALJ found that Plaintiff possessed moderate limitations in two of the four functional paragraph B categories, including in her ability to interact with others, and to concentrate, persist, or maintain pace.  [R. 19–20].  By contrast, the ALJ determined that Plaintiff possessed only mild limitations in terms of her ability to understand, remember, or apply information and her ability to adapt and/or manage herself.  [R. 19–20].  The ALJ thus concluded Plaintiff did not meet the paragraph B criteria because she did not have two marked limitations or one extreme limitation in the functional categories.  [R. 20].

The ALJ additionally found that Plaintiff also did not meet the paragraph C criteria.  [R. 20].

At step four, the ALJ found that Plaintiff possessed an RFC for a "full range of work at all exertional levels" with additional non-exertional limitations.  [R. 21].  Specifically, the ALJ limited Plaintiff to "simple, routine tasks" for "[two]-hour periods;" "simple work-related decisions;" and "occasional interactions with supervisors, coworkers, and the general public."

---

[7] The ALJ also noted that Plaintiff had a history of hypothyroidism, which he similarly found not severe.  [R. 19].  Plaintiff, however, has not challenged the ALJ's findings regarding her hypothyroidism.  *See* [ECF No. 12].

[R. 21].  The ALJ subsequently determined that Plaintiff was unable to perform her past relevant work as a utilization coordinator or clinical coordinator.  [R. 24–25].

At step five, the ALJ relied on the testimony of a vocational expert ("VE") in concluding that there were sufficient jobs existing in the national economy that Plaintiff could perform, including linen room attendant, ingredient scaler, and package sealer.  [R. 25–26].  The ALJ thus ultimately concluded that Plaintiff was not disabled at step five.  [R. 26].

## II.    STANDARD OF REVIEW

This Court's review of the Commissioner's decision is "limited to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence." *Ward v. Comm'r of Soc. Sec.,* 211 F.3d 652, 655 (1st Cir. 2000); *accord Sacilowski v. Saul*, 959 F.3d 431, 437 (1st Cir. 2020) (citation omitted) (holding the court reviews "whether the final decision is supported by substantial evidence and whether the correct legal standard was used"). The Court must defer to the Commissioner's factual findings, so long as such findings are "supported by substantial evidence," but the Court's review of the Commissioner's conclusions of law is de novo.  *See Sacilowski*, 959 F.3d at 437; *see also Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations."  *Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Substantial evidence is "more than a mere scintilla" and "means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.; see also Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).  The Court will affirm the ALJ's findings, even if the record

could support a different conclusion, when there is substantial evidence to support the ALJ's findings. *See Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991); *accord Purdy v. Berryhill*, 887 F.3d 7, 13 (1st Cir. 2018).

A denial of benefits, however, will not be upheld if "the [Commissioner] has committed a legal or factual error in evaluating a particular claim." *See Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996) (quoting *Sullivan v. Hudson*, 490 U.S. 877, 885 (1989)). In particular, an ALJ's findings are not conclusive "'when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts.'" *Sacilowski*, 959 F.3d at 437 (quoting *Nguyen v. Chater*, 172 F.3d at 35). Accordingly, if an "ALJ fail[s] to record consideration of an important piece of evidence that supports [the claimant's] claim and, thereby, le[aves] unresolved conflicts in the evidence, [the] Court cannot conclude that there is substantial evidence in the record to support the Commissioner's decision." *Nguyen v. Callahan*, 997 F. Supp. 179, 183 (D. Mass. 1998); *see also Crosby v. Heckler*, 638 F. Supp. 383, 385–86 (D. Mass. 1985) ("Failure to provide an adequate basis for the reviewing court to determine whether the administrative decision is based on substantial evidence requires a remand to the ALJ for further explanation.").

## III.    DISCUSSION

Plaintiff argues that the ALJ's decision should be reversed because: (1) the Appeals Council improperly rejected new evidence, referring to the September 30, 2022 x-ray report; (2) the ALJ erred at steps two and four when he found Plaintiff's physical impairments were not severe and failed to adequately account for their limitations in Plaintiff's RFC; (3) the ALJ erred in evaluating Plaintiff's testimony and medical opinions regarding her mental impairments; and (4) the ALJ erred in accepting the VE's testimony. [ECF No. 12]. The Commissioner argues the

ALJ's decision is free of harmful legal error, supported by substantial evidence, and should be affirmed.  [ECF No. 17].

The Court addresses each issue in turn, and concludes that, for the reasons below, the ALJ erred on issues one and two concerning Plaintiff's physical impairments, but did not err on issue three regarding Plaintiff's mental impairments.  The Court declines to address the fourth issue given the additional proceedings warranted on remand.

### A.    The Appeals Council's Failure to Consider the New Evidence Constituted Egregious Error.

Plaintiff submitted the September 2022 x-ray evidence described above with her petition for review to the Appeals Council.  [R. 2].  With no explanation, the Appeals Council found that the evidence did "not relate to the period at issue," and, therefore, did "not affect the decision about whether [Plaintiff was] disabled beginning on or before August 17, 2022."  [R. 2].  The Appeals Council subsequently denied review.  [R. 2].

Under SSA regulations, in reviewing decisions based on an application for benefits, if new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it "relate[s] to the period on or before the date of the administrative law judge hearing decision."  20 C.F.R. § 416.1470(c).  When a claimant challenges the Appeals Council's denial of review following an offer of new evidence, the courts will disturb such rulings only if the Appeals Council "gives an egregiously mistaken ground" for denying review. *Mills v. Apfel*, 244 F.3d 1, 5 (1st Cir. 2001); *accord Lesieur v. O'Malley*, No. 23-cv-01022, 2024 WL 513702, at *1 (1st Cir. Feb. 8, 2024).

Plaintiff argues that the Appeals Council's rejection of the new evidence constituted an "egregious mistake" requiring remand because, contrary to the Appeals Council's finding, the evidence related to the period at issue.  [ECF No. 12 at 8–9].  The Commissioner counters that

because there was only a "possibility" that the evidence related to the period at issue, the

Appeals Council did not error.  [ECF No. 17 at 9].

The Court agrees that the September 2022 x-ray relates back to the physical impairments

at issue in Plaintiff's 2020 SSI claim.  Plaintiff continued to suffer from pain and discomfort

related to her back injury more than one year after the initial accident—following ongoing

chiropractic treatment and prior unrevealing imaging, including a previous x-ray and CT scan.

*See* [R. 46, 885, 829, 717, 599–603].  There is no dispute that Plaintiff's anxiety and panic

disorder—impairments the ALJ found severe—interfered with her ability to undergo the

recommended MRI.  [R. 18, 594, 713, 851–52].  Moreover, the record reveals that at the time of

Plaintiff's hearing, Plaintiff's chiropractor had recommended another CT scan, which Plaintiff

had not yet received.  [R. 863].  Given the record evidence confirming the ongoing nature of

Plaintiff's claimed back impairment, as described above, the Court finds that the September 2022

x-ray clearly pertained to a physical complaint at issue in Plaintiff's 2020 SSI claim, and, as

such, related back to the relevant time period.

Because this was the only reason proffered by the Appeals Council, remand is required.

*See Cano v. Saul,* No. 19-cv-11563, 2020 WL 1877876, at *10 (D. Mass. Apr. 15, 2020) (citing

*Citizens Awareness Network, Inc. v. United States*, 391 F.3d 338, 349 (1st Cir. 2004)) (holding

that Court limits its review of the Appeals Council's rejection of new evidence to those reason(s)

articulated by the Appeals Council, which, in *Cano*, included the sole reason that the new

evidence did not relate to the time period at issue); *accord Duran v. O'Malley,* ---F. Supp. 3d --,

2024 WL 4519723, at *8 (D. Mass. Oct. 17, 2024).  The Appeals Council commits "egregious

error" when, as here, it refuses to review the case based only on a finding that the new evidence

"does not relate to the period at issue" simply because the record is dated shortly after the

decision was issued. *See Cabral v. Kijakazi*, 559 F. Supp. 3d 30, 31 (D. Mass. Apr. 25, 2022) (Appeals Council egregiously erred in rejecting medical evidence dated shortly after the ALJ's decision, stating simply that the new evidence did "not relate to the period at issue," where the new evidence pertained to the mental and physical impairments at issue in the case.); *accord Jacquelyn V. v. Kijakazi*, No. 21-cv-00314, 2023 WL 371976, at *11-12 (D.R.I. Jan. 24, 2023) (holding Appeals Council egregiously erred in rejecting new medical records dated weeks after the ALJ's decision where the medical records related to conditions at issue during the relevant period).

Moreover, the "possibility" that the Commissioner references in opposition is not, in actuality, a "possibility" that the new evidence failed to relate to the relevant time period but rather refers to the "possibility" of the evidence being material. [ECF No. 17 at 9 (noting that the "use of the word 'could'" by the x-ray report shows that the abnormality "could be an anatomic variant or could not be an anatomic variant" and further noting the possibility that the abnormality was "age-indeterminate")]. The Court disagrees that this materiality-related "possibility" negates the Appeals Council's error regarding the relation back of the new evidence.

Contrary to the Commissioner's suggestion, the new evidence here is directly material to the step two issues discussed below on which the ALJ erred: whether Plaintiff's back impairment constitutes an MDI, and whether any MDI was, in turn, severe. That the x-ray evidence itself referred to alternate explanations for the conditions it captured did not undermine the record's materiality, but instead highlighted the need for potential further record development on the issue. *See Heggarty v. Sullivan*, 947 F.2d 990, 997 (1st Cir. 1991) (internal quotations and citations omitted) ("Because Social Security proceedings are not adversarial in nature, the

Secretary had a duty to develop an adequate record from which a reasonable conclusion can be drawn.").

For these reasons, remand to the ALJ for consideration of the new evidence is required because the Appeals Council articulated an egregiously mistaken ground for its refusal to consider the evidence. As set forth below, the Court has also determined that the new evidence, which is related to the back impairment at issue in Plaintiff's 2020 SSI claim, supports the Court's determination that the ALJ erred in his step two duration finding.

The Court additionally notes that, on remand, the ALJ is required to further develop the record regarding the import and interpretation of the new evidence. While the September 2022 x-ray appears to have been ordered by Dr. Delahanty, additional medical information from Dr. Delahanty and/or other medical sources explaining the results of the x-ray is warranted. *See Manso–Pizarro*, 76 F.3d at 17 ("An ALJ, as a lay person, is not qualified to interpret raw data in a medical record."); *Berrios Lopez v. Sec'y of Health & Hum. Servs.*, 951 F.2d 427, 430 (1st Cir. 1991) ("Since bare medical findings are unintelligible to a lay person in terms of [RFC], the ALJ is not qualified to assess claimant's [RFC] based on the bare medical record.").[8]

### B.    The ALJ Harmfully Erred in Evaluating Plaintiff's Back and Rib Impairment at Step Two.

As noted, at step two, the ALJ found that Plaintiff's back and rib pain did not constitute a severe impairment of a sufficient duration. [R. 19]. In particular, the ALJ found that:

---

[8] Other than to state the abnormalities—which, as noted, include "[c]hanges of multilevel lumbar spondylosis[,]" "[s]ubtle left lateral subluxation [of] L4 [on] L5[,]" "subtle retrolisthesis," and a "subtle anterior wedging L1 vertebral body" that "could relate to anatomic variants versus age-indeterminate mild compression fracture deformity"—the x-ray report does not contain medical interpretation or explanation. [R. 58–59].

[W]hile the record demonstrates that the claimant likely experienced a period of significant functional limitation in the months after her fall due to back pain, there is little evidence that such limitations continued for a period of [twelve]-months or more or continued to result in significant residual limitations.

[R. 19].

In support, the ALJ cited to Plaintiff's treating chiropractor's records from July 2021 through May 2022, noting that Plaintiff's prognosis was good, that she "consistently reported improvement in her back pain," and that she rated her pain "no more than 2/10" from November 2021–May 2022.  [R. 19 (citing R. 650–720; 851–88)].  Additionally, the ALJ noted that Plaintiff was scheduled to undergo an MRI, but declined due to anxiety.  [R. 19].

Plaintiff argues that the ALJ erred in his duration finding and in his severity findings. [ECF No. 12 at 12–15].  As for the severity findings, Plaintiff notes that the ALJ failed to consider or discuss the opinions of the state agency physicians, Drs. Jao and McFee, and contends that the ALJ improperly substituted his own lay conclusions in lieu of the medical evidence.  [ECF No. 12 at 14, R. 13–16].  She further asserts that the ALJ misinterpreted the supporting medical evidence such that his findings were contrary to the weight of the evidence in the record.  [ECF No. 12 at 12–16].

Additionally, Plaintiff contends that the ALJ's step two errors were "outcome-determinative" because the ALJ did not consider any limitations associated with Plaintiff's physical impairments at step four, thus failing to incorporate any related limitations into her RFC.  [ECF No. 12 at 12–13].  Plaintiff asserts that had the ALJ accounted for the appropriate limitations, he would have assessed an RFC that "very likely . . . preclude[d] the three very physically demanding medium [exertion] jobs [the ALJ found] at Step Five."  [*Id.*].

The Commissioner counters that the ALJ adequately explained why Plaintiff's back condition was not a severe impairment and that the duration was insufficient, and argues that substantial evidence supported the ALJ's findings.  [ECF No. 17 at 10].

    1.    *Remand is Required for the ALJ to Evaluate Whether Plaintiff's Back and Rib Impairment Constitutes an MDI.*

Plaintiff's challenge to the ALJ's evaluation of his physical impairments at step two focuses primarily on the ALJ's severity findings.

Determining severity is a two-step process.  *See* Social Security Ruling ("SSR") 16-3p, *Titles II & XVI: Evaluation of Symptoms in Disability Claims*, 2017 WL 5180304, at *3–8 (Oct. 25, 2017); *see also Forrette v. Saul*, No. 19-cv-30089, 2020 WL 5803166, at *10 (D. Mass. Sept. 29, 2020). [9]  Prior to determining whether an impairment is "severe," as the ALJ did here, an ALJ is required to first ascertain whether the impairment constitutes "an underlying medically determinable physical or mental impairment(s) [("MDI")] that could reasonably be expected to produce an individual's symptoms."  SSR 16-3p, 2017 WL 5180304, at *3; *see also* 20 C.F.R. § 416.921.  MDIs are defined as, "anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 416.921.  The governing regulation, 20 C.F.R. § 416.921, emphasizes that:

> [A] physical or mental impairment must be established by objective medical evidence from an acceptable medical source. We will not use [a claimant's] statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s).

*Id.*

---

[9] SSRs are binding on all Social Security Administration personnel, including state agency adjudicators, administrative law judges, and the Appeals Council.  *McDonald v. Sec'y of Health & Hum. Servs.*, 795 F.2d 1118, 1125 (1st Cir. 1986).

The regulations provide that it is only "after [the ALJ] establish[es] that [a claimant] ha[s] a medically determinable impairment(s), [that he] determine[s] whether [her] impairment(s) is severe." 20 C.F.R. §§ 416.921, 404.1521; *see also* SSR 16-3, 2017 WL 5180304 at *3. [10] In

---

[10] The governing SSR, SSR 16-3p, explains the difference between the two inquiries or steps as follows:

> For example, if an individual has a medically determinable impairment established by a knee x-ray showing mild degenerative changes and he or she alleges extreme pain that limits his or her ability to stand and walk, we will find that individual has a medically determinable impairment that could reasonably be expected to produce the symptom of pain. We will proceed to step two of the two-step process, even though the level of pain an individual alleges may seem out of proportion with the objective medical evidence.

2017 WL 5180304 at *3. The SSR further explains the process where the objective medical evidence is insufficient to ascertain whether an impairment constitutes an MDI:

> In some instances, the objective medical evidence clearly establishes that an individual's symptoms are due to a medically determinable impairment. At other times, we may have insufficient evidence to determine whether an individual has a medically determinable impairment that could potentially account for his or her alleged symptoms. In those instances, we develop evidence regarding a potential medically determinable impairment using a variety of means set forth in our regulations. For example, we may obtain additional information from the individual about the nature of his or her symptoms and their effect on functioning. We may request additional information from the individual about other testing or treatment he or she may have undergone for the symptoms. We may request clarifying information from an individual's medical sources, or we may send an individual to a consultative examination that may include diagnostic testing. We may use our agency experts to help us determine whether an individual's medically determinable impairment could reasonably be expected to produce his or her symptoms. At the administrative law judge hearing level or the Appeals Council level of the administrative review process, we may ask for and consider evidence from a medical or psychological expert to help us determine whether an individual's medically determinable impairment could reasonably be expected to produce his or her symptoms. If an individual alleges symptoms, but the medical signs and laboratory findings do not substantiate any medically determinable impairment capable of producing the individual's alleged symptoms, we will not evaluate the individual's symptoms at step two of our two-step evaluation process.

contrast to MDIs, "severity" subsequently pertains to whether the MDI "significantly limits" the claimant's "ability to do basic work activities."  20 C.F.R. §§ 416.921, 416.920(c), 404.1520(c); *see also* SSR 16-3p, 2017 WL 5180304 at *4.

Here, while it is clear that the ALJ found that Plaintiff's back impairment was not severe, his decision does not reflect that he made the requisite threshold finding as to whether Plaintiff's back impairment constituted an MDI.  *See* [R. 19].  In framing her argument, Plaintiff erroneously assumes that the ALJ made an MDI finding regarding her back impairment, suggesting that simply because the ALJ addressed the severity of her back/rib impairment, the ALJ must have by necessity also found that the impairment constituted an MDI.  *See* [ECF No. 12 at 15 ("By finding the physical impairments non-severe, the ALJ inherently rejects the 'no MDI' finding [from state agency physician, Dr. Jao] because only an MDI can be found non-severe.")].[11]  That mistaken assumption is, however, belied by the language of the ALJ's own step two analysis and is further undermined by the ALJ's subsequent step four analysis.  *See* [R. 19, 21–24].  Close review of the ALJ's decision instead reveals that he conflated the legal standards and analysis regarding MDI, severity, and duration findings at step two, and, in doing so, failed to make any MDI findings.[12]

---

*Id.* at *4.

[11] The Commissioner has not addressed the issue.  *See* [ECF No. 17 at 10–11].

[12] The ALJ never addressed whether Plaintiff provided sufficient objective evidence that the back and rib pain constituted an MDI.  *See* [R. 19].  And, notably, as discussed in more detail below, the ALJ failed to adequately consider Plaintiff's physical impairments in assessing her RFC at step four.  [R. 21–24].  This absence suggests that the ALJ did not in fact make an implicit finding that Plaintiff's physical impairments constituted an MDI and/or that the ALJ misapplied the law requiring him to consider all MDIs at step four—even those that are not

Significantly, the ALJ's failure to make a clear MDI finding undermined his step two severity finding and constituted error—an error that was not rendered harmless by the ALJ's additional step two and step four findings for two primary reasons.

First, an ALJ is required to consider an MDI at step four of the sequential analysis regardless of whether the impairment is deemed "severe."  *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) (in assessing a claimant's residual function capacity, the SSA considers all medically determinable impairments—severe and non-severe); *see also Knowlton v. Saul*, No. 20-cv-00245, 2021 WL 9684351, at *4 (D.N.H. Mar. 29, 2021) (remanding where ALJ erred at step four when he failed to account for Plaintiff's lumbar impairment MDI); *Cooley v. Saul*, No. 19-cv-00679, 2020 WL 5406044, at *4–5 (D.N.H. Sept. 9, 2020) (ALJ's failure to consider non-severe impairments when addressing the RFC is reversible error); *Lavoie v. Colvin*, No. 15-cv-00209, 2016 WL 3554963, at *3 (D.N.H. June 24, 2016) (remanding when ALJ failed to consider non-severe impairments in addressing the RFC).

Here, the ALJ's boilerplate statement that he "considered all of the claimant's medically determinable impairments, including those that [were] not severe, when assessing the claimant's [RFC]" was not sufficient because "in practice" the ALJ failed to do so.  [R. 19]; *see also Aponte-Morales v. Comm'r of Soc. Sec.*, No. 19-cv-01563, 2021 WL 3879451, at *8 (D.P.R. Aug. 31, 2021) (holding that "[a] boilerplate assertion without analyzing impairments in the RFC determination is insufficient"); *accord Smith v. Saul*, No. 18-cv-01086, 2019 WL 5957294, at *4 (D.N.H. Nov. 13, 2019) (quoting *Lavoie*, 2016 WL 3554963, at *4) ("This court has consistently

---

considered "severe"—or both.  *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).  Either way, there is legal error.

ruled that a 'boilerplate assertion that an ALJ considered all of the claimant's impairments in combination, without describing any actual analysis, is insufficient'").[13]

Second, this error also was not remedied by the ALJ's finding that Plaintiff's *mental* impairments were severe and the ALJ's continuation of the sequential analysis as to the impact of those mental impairments.  [R. 21–24].  The limitations associated with Plaintiff's mental impairments, as considered by the ALJ at step four, were not the same as those associated with Plaintiff's back and rib injury/pain.  Thus, the step two error regarding Plaintiff's physical impairments could not be remedied merely by continuing the sequential analysis as to the mental impairments.  *See Aponte-Morales*, 2021 WL 3879451, at *7.

For these reasons, the Court finds that the ALJ erred in failing to adequately assess whether Plaintiff's back and rib impairment constituted an MDI, and that error was not harmless. The error also infected the ALJ's ultimate, related step two finding regarding the severity of Plaintiff's impairment, as discussed in more detail below.  The error was further exacerbated by the ALJ's failure to address the physical impairment limitations at step four.

The Court declines to make a finding as to whether Plaintiff's back and rib impairments constitute an MDI under 20 C.F.R. § 416.921 at this stage—especially given that this case must already be remanded for the ALJ to consider the related new evidence.

---

[13] The Court notes that "[e]ven though an ALJ is . . . not required to find a limitation for each impairment, each impairment must at the very least be *considered* in the assessment of the RFC." *Aponte-Morales*, 2021 WL 3879451, at *8.

Accordingly, on remand, the ALJ is required to consider and make explicit findings as to whether Plaintiff's back/rib impairment constitutes an MDI. [14] In doing so, the ALJ must consider the new x-ray evidence from September 2022. *See* [R. 58–59].

Furthermore, pursuant to the analysis set forth below, the Court concurrently determines that the ALJ erred in his related step two duration finding. Accordingly, if, on remand, the ALJ finds that Plaintiff's back/rib impairment constitutes an MDI, the ALJ will necessarily then also be required to consider the limitations associated with that MDI in assessing Plaintiff's RFC at step four.

2.     *The ALJ Erred in His Step Two Duration Finding.*

The ALJ acknowledged that Plaintiff's impairment arose "after a fall in May or June of 2021." *See* [R. 19 (citing R. 598) (NP Porter's September 2021 visit notes regarding injury two to three months prior)]. However, after acknowledging that Plaintiff's treatment for the

---

[14] The Court notes that Plaintiff has submitted records from her chiropractor, PCP, and NP Porter. As noted above, 20 C.F.R. § 416.921 requires that "a physical or mental impairment must be established by objective medical evidence from an *acceptable medical source*." (Emphasis added.). "Acceptable medical sources" are limited to licensed physicians and psychologists, and (within their areas of specialization or practice) to optometrists, podiatrists, audiologists, advanced practice registered nurses, physician assistants, and speech pathologists. *See* 20 C.F.R. §§ 404.1502(a), 416.902(a). Evidence from other medical sources, such as licensed social workers or chiropractors, is insufficient to establish the existence or severity of a claimant's impairments. *Id.*

Thus, while Dr. Delahanty's records and NP Porter's records may be utilized to establish an MDI on remand, the records from Plaintiff's chiropractor, by contrast, do not constitute objective medical evidence from an "acceptable medical source" sufficient to establish a medically determinable impairment. *See Gage v. O'Malley*, No. 24-cv-00099, 2024 WL 4143600, at *5 & n.6 (D.N.H. Sept. 11, 2024) (citing 20 C.F.R. §§ 404.1502, 404.1513) (noting, though, that "[o]nce a medically determinable impairment is properly established by an acceptable medical source, an ALJ may consider evidence from chiropractors for other purposes, including the severity of the impairment"); *see also William S. v. O'Malley*, No. CV 24-00143, 2024 WL 4123488, at *4 (D.R.I. Sept. 9, 2024).

impairment continued into May 2022—twelve months after the onset date—the ALJ nevertheless found that the impairment was of insufficient duration because it was not severe and did not result in "significant" limitations during the entire twelve-month period.  [R. 19 (citing R. 851–88) (chiropractic records reflecting improvement in Plaintiff's impairment between November 2021 and May 2022)].

Plaintiff argues that the ALJ erred in assessing the duration, first suggesting that the ALJ erred regarding the onset date of her back injury, which she contends occurred at the latest in May 2021.  [ECF No. 12 at 15].  The ALJ, however, did find that the injury occurred in or slightly after May 2021.  [R. 19 (noting that Plaintiff experienced the injury "after a fall in May or June 2021")].  Plaintiff then asserts that because there was a May 24, 2022 chiropractic record showing treatment and reflecting that Plaintiff was still suffering from pain (even if it was at 2/10), the ALJ should have found that the duration requirement was satisfied.  [ECF No. 12 at 15].

The Commissioner counters that the ALJ's duration finding was supported given the improved severity in Plaintiff's condition to a 2/10 on the pain scale.  [ECF No. 17 at 10].  The Commissioner also asserts that the record suggests Plaintiff "stopped treatment in May 2022 as there are no treatment records after that date for Plaintiff's back."[15]  [*Id.*].

The Court agrees with Plaintiff that the ALJ erred in his step two duration finding.  The relevant regulation, 20 C.F.R. § 416.909, sets forth the "duration requirement" applicable to impairments, and provides that, "[u]nless [an] impairment is expected to result in death, it must

---

[15] As discussed above, Plaintiff's testimony and her chiropractor's visit records, which extended the treatment completion date to December 2022, suggest the opposite.  *See* [R. 46 (Plaintiff testifies that she cannot "do without" the chiropractic treatment for her back, noting that she was still seeing her chiropractor at the time of the hearing.)].

have lasted or must be expected to last for a continuous period of at least [twelve] months." The governing SSR, SSR 82-52, clarifies that:

> "Duration of impairment" under title II and title XVI refers to that period of time during which an individual is continuously unable to engage in any SGA, or any gainful activity in the case of a title II widow, widower, or surviving divorced spouse or a title XVI child under age 18, *because of a medically determinable physical or mental impairment(s).*

SSR 82-52, *Titles II & XVI: Duration of the Impairment*, 1982 WL 31376, at *1 (S.S.A. 1982) (emphasis added).

The ALJ here expressly acknowledged that Plaintiff's impairment arose "after a fall in May or June of 2021," and that it continued at least into May 2022. *See* [R. 19 (citing R. 598) (NP Porter's September 2021 visit notes regarding injury two to three months prior)]; [R. 19 (citing R. 851–88) (chiropractic records reflecting improvement in Plaintiff's impairment in May 2022)]. Moreover, as discussed above, the new, additional x-ray evidence from September 2022 suggests that Plaintiff's back impairment continued then. [R. 58–59]. Thus, substantial evidence demonstrates that the twelve-month requirement was satisfied.

In finding otherwise, the ALJ here erred by conflating the "duration requirement" with his severity analysis. Unlike the severity analysis (discussed below), the assessment of impairment duration simply requires the ALJ to evaluate whether the impairment "has lasted, or is expected to last, for a continuous period of at least twelve (12) months." SSR 82-52, 1982 WL 31376 at *1; *see also* 20 C.F.R. §§ 404.1509, 416.909.

This Court agrees with the numerous out-of-circuit courts that have found legal error where an ALJ inappropriately conflates the analysis of severity and duration. *See, e.g.*, *Barbara S. v. Comm'r of Soc. Sec.*, No. 21-cv-06244, 2023 WL 4246521, at *4 (W.D.N.Y. June 29, 2023) (holding that "the severity inquiry is distinct from the durational requirement"); *Gibson v.*

28

*Comm'r of Soc. Sec.*, No. 21-cv-00041, 2022 WL 4661554, at *2 (E.D.N.Y. Sept. 30, 2022) (holding that "although whether an impairment is severe and whether an impairment meets the duration requirement are both addressed at step two in the evaluation process, these are separate questions that require separate analyses" (alteration and emphasis omitted)); *Naylor v. Kijakazi*, No. 20-cv-01507, 2022 WL 905545, at *5 (M.D. Pa. Mar. 28, 2022) (holding that "[b]ecause [the] ALJ improperly conflated the issues of impairment duration with impairment severity at step two, . . . the ALJ's step two finding on Plaintiff's gout was a legal error"); *Benoit v. Saul*, No. 19-cv-00443, 2019 WL 6001596, at *6–7 (D. Conn. Nov. 14, 2019) ("Because the ALJ improperly conflated the issues of impairment duration with impairment severity at Step Two, the Court finds that the ALJ's conclusion that Plaintiff's mental health impairment is non-severe because it does not meet the durational requirement is error."); *Gray v. Astrue*, No. 04-cv-3736, 2009 WL 1598798, at *5 (S.D.N.Y. June 8, 2009) (noting that "[a]lthough whether an impairment is severe and whether an impairment meets the duration requirement are both addressed at step two in the evaluation process, these are separate questions that require separate analyses"); *Stadler v. Barnhart*, 464 F. Supp. 2d 183, 189 (W.D.N.Y. 2006) ("To state that an impairment is not severe because it does not meet the twelve-month requirement, then, is inconsistent with the Commissioner's own interpretation of the regulations."); *accord White v. Colvin*, No. 16-cv-0322, 2018 WL 6537150, at *7 (M.D. Pa. Nov. 21, 2018); *Snedeker v. Colvin*, No. 13-cv-970, 2015 WL 1126598, at *4 (N.D.N.Y. Mar. 12, 2015).

Here, substantial evidence—including the very evidence cited by the ALJ—demonstrated that Plaintiff's back impairment satisfied the twelve-month duration requirement. The ALJ's error in assessing duration, when combined with the ALJ's failure to assess whether Plaintiff's

physical impairments constituted MDIs, was not harmless because the ALJ also subsequently

failed to consider any limitations associated with Plaintiff's back and rib impairment at step four.

As noted, if, on remand, the ALJ finds Plaintiff's back/rib impairment constitutes an

MDI, the ALJ is then required to consider the MDI at step four—regardless of its severity—

given the Court's finding here that substantial evidence demonstrates that Plaintiff's back/rib

impairment satisfied the duration requirement.

        3.     *Remand is Also Required for the ALJ to Reconsider His Step Two Severity*
              *Findings.*

As noted, Plaintiff argues that the ALJ erred in determining that her back and rib pain

were "not severe," contending the ALJ improperly substituted his own lay conclusions for the

medical evidence and also misinterpreted the supporting medical evidence. [ECF No. 12 at 13–

16]. Specifically, Plaintiff contends that the ALJ's statements regarding her likelihood for

recovery were not supported by substantial evidence but instead by the ALJ's "gut instinct." [*Id.*

at 15]. Plaintiff further argues that the medical record—including the very records cited by the

ALJ—demonstrated that Plaintiff's back/rib impairment was severe given the evidence regarding

Plaintiff's muscle spasms and her reduced range of motion. [*Id.* at 16 (citing R. 851–52, 884)];

*see also* [R. 19 (citing "Exhibit C18F," which includes R. 851–88)].

The Commissioner counters that the ALJ adequately explained why Plaintiff's back

condition was not a severe impairment, and that substantial evidence supported the ALJ's

findings. [ECF No. 17 at 10]. The Commissioner, however, fails to address Plaintiff's related

argument that the ALJ erred in his failure to consider her back/rib impairment at step four. [*Id.*

at 10–11].

As discussed above, once an impairment is considered an MDI, the ALJ is then required

to consider whether the impairment is "severe," or, in other words, whether it "significantly

limits" the claimant's "ability to do basic work activities." *See* 20 C.F.R. §§ 404.1520(c),

416.921(c); SSR 16-3p, 2017 WL 5180304, at *3; *see also Forrette*, 2020 WL 5803166, at *10;

20 C.F.R. §§ 404.1520(a)(4)(ii) and (c), 416.920(a)(4)(ii) and (c).  Examples of "basic work

activities" include "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or

handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple

instructions; use of judgement, responding appropriately to supervision, coworkers, and usual

work situations; and dealing with changes in a routine work setting."  SSR 85-28, *Titles II &

XVI: Medical Impairments That Are Not Severe*, 1985 WL 56856, at *3 (S.S.A. 1985).

     The First Circuit has recognized that "[u]nder Social Security Ruling 85-28, a claim may

be denied at step [two] for lack of a severe impairment only where medical evidence establishes

only a slight abnormality . . . which would have no more than a minimal effect on an individual's

ability to work even if the individual's age, education, or work experience were specifically

considered."  *Barrientos v. Sec'y of Health & Hum. Servs.*, 820 F.2d 1, 2 (1st Cir. 1987) (per

curiam) (internal quotation marks and citation omitted); *see also Bowen v. Yuckert*, 482 U.S.

137, 153 (1987) (noting that the purpose of step two is to identify claimants "whose medical

impairments are so slight that it is unlikely they would be found to be disabled even if their age,

education, and experience were taken into account"); *McDonald*, 795 F.2d at 1124 (recognizing

that "the [s]tep [t]wo severity requirement is . . .  intended to do no more than screen out

groundless claims").

     Unlike an MDI determination, in assessing the severity of a claimant's impairment, an

ALJ considers other evidence in addition to the objective medical records from acceptable

medical sources.  *See* SSR 16-3p, 2017 WL 5180304, at *6.  In particular, an ALJ "will consider

. . . statements from the individual, medical sources, and any other sources that might have

information about the individual's symptoms." *Id.* The ALJ evaluates the intensity and persistence of an individual's symptoms, including pain, to determine the extent to which the individual's symptoms limit her ability to perform work-related activities or to function independently. *See id.* at *6–10.

SSR 85-28, which governs medical impairments that are not severe, explicitly required the ALJ here to find that the medical evidence "clearly established" that Plaintiff's back and rib impairment was "not medically severe, i.e. d[id] not have more than a minimal effect on [her] physical . . . ability to perform basic work activities." 1985 WL 56856, at *3. Accordingly, in reviewing the ALJ's non-severity determination, the Court asks "whether the ALJ had substantial evidence to find that [pursuant to SSR 85-28] the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments." *Glanden v. Kijakazi,* 86 F.4th 838, 844 (9th Cir. 2023) (quoting *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005)); *accord Mohammad v. Astrue,* No. 10-cv-00254, 2011 WL 1706116, at *5 & n.13 (D.N.H. Apr. 4, 2011)*, report and recommendation adopted sub nom. Mohammad v. Soc. Sec. Admin.*, 2011 WL 1692390 (D.N.H. May 4, 2011) (quoting standard as set forth in *Webb*, 433 F.3d at 687). Pursuant to SSR 85-28, an "inconclusive medical record [would have] preclude[d] denial at this step." *Glanden,* 86 F.4th at 844 (discussing SSR 85-28).

Here, given (1) the existence of new evidence, (2) the Court's above determination that the ALJ erred in his duration finding, and (3) the related remand for the ALJ to make explicit findings regarding whether the back/rib impairment constitutes an MDI, the Court concludes that the ALJ must also revisit his step two severity findings on remand. In reevaluating severity on remand, the ALJ is required to apply the controlling law, as described above, and to complete the

necessary two-step evaluation, which requires the ALJ to first assess whether Plaintiff's physical impairments constitute an MDI and to then evaluate the severity of the impairments.

### C.    The ALJ Did Not Err in Evaluating Plaintiff's Testimony and the Medical Opinion Evidence Regarding Her Mental Impairments.

Plaintiff additionally argues that the ALJ erred in assessing her mental impairments. Plaintiff frames this as a claim that the ALJ failed to properly evaluate her pain and symptom testimony, but, in actuality, she argues both that the ALJ improperly discounted her testimony, and that the ALJ misevaluated the medical opinion evidence from Dr. Keuthen and from Therapist Adams and Dr. Kisch. [ECF No. 12 at 16–18].

#### 1.    *The ALJ Did Not Err in Evaluating the Challenged Medical Opinions Regarding Plaintiff's Mental Impairments.*

In assessing the functional limitations associated with Plaintiff's mental impairments, the ALJ considered five medical opinions, including two opinions that predated the August 2020 commencement of the relevant period in this case: an August 2019 opinion from Plaintiff's treating therapist, Ms. Adams, and psychiatrist, Dr. Kisch; and a June 2014 opinion from examining psychologist, Dr. John Pelletier.[16] [R. 23-24; R. 277-82 (Dr. Pelletier's 2014 opinion); R. 385-96 (Therapist Adams and Dr. Kisch's 2019 opinion)]. The ALJ additionally

---

[16] The Court acknowledges that what were previously considered "opinions" from state agency medical and psychological consultants were relabeled in 2017 as "prior administrative medical finding[s]." 20 C.F.R. § 416.913(a)(5); *see also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2016 WL 4702272, 81 Fed. Reg. 62560-01, 62564 (S.S.A. Sept. 9, 2016). For clarity, because "prior administrative medical findings" continue to be treated the same as other medical opinions, the Court will refer to the "prior administrative medical findings" as "opinions" throughout this Order. *See* 20 C.F.R. §§ 404.1520c, 416.920c (considering "prior administrative medical findings" in the same manner and using the same factors as "medical opinions"); *see also* 81 Fed. Reg. at 62564 ("We would consider and articulate our consideration of prior administrative medical findings using the same factors we use to consider medical opinions from medical sources.").

considered 2020 and 2021 opinions from non-examining state agency psychologists, Drs.

Kathryn Collins-Wooley and Keuthen, along with a June 2021 opinion from examining

psychologist, Dr. Lynn Cattanach.  [R. 23–24, 119–22 (Dr. Keuthen's December 2021 opinion

on reconsideration), 582–87 (Dr. Cattanach's 2021 opinion)]; *see also* [R. 107–15 (on initial

review, state agency psychologist Dr. Collins-Wooley's June 2021 opinion)].  In assessing

Plaintiff's RFC, the ALJ found persuasive Dr. Keuthen's opinion and adopted its stated

limitations.  [R. 23–24].  By contrast, the ALJ found the other opinions—including the

challenged August 2019 opinion from Therapist Adams and Dr. Kisch—to be of limited

persuasive value.  [R. 23–24].

Plaintiff specifically argues that the ALJ erred in evaluating the medical opinion evidence

regarding her mental impairment limitations when he "overrelied" on the December 2021

opinion from non-examining state agency physician, Dr. Keuthen, and improperly rejected the

contrary combined August 2019 opinion from Therapist Adams, and Dr. Kisch.  [ECF No. 12 at

17]; [R. 119–22, 385–96].

Under the 2017 regulations governing Plaintiff's application, "an ALJ does not assign

specific evidentiary weight to any medical opinion and need not defer to the opinion of any

medical source (including the claimant's treating providers)."  *Richardson v. Saul*, 565 F. Supp.

3d 154, 167 (D.N.H. 2021) (citing 20 C.F.R. § 416.920c(a)).  When determining what weight to

assign to a medical source opinion, the ALJ must consider the opinion's "supportability,

consistency, relationship, specialization, and other factors."  *Harrison v. Saul*, No. 20-cv-10295,

2021 WL 1153028, at *5 (D. Mass. Mar. 26, 2021) (citing C.F.R. §§ 404.1520c(c)(1)–(5),

416.920c(c)(1)–(5)).  "The most important factors to be considered when the Commissioner

evaluates persuasiveness are supportability and consistency; these are usually the only factors the

ALJ is required to articulate." *Id.* (citation omitted); *see also Nicole C. v. Saul*, No. 19-cv-00127, 2020 WL 57727, at *4 (D.R.I. Jan. 6, 2020))) (citations omitted) (holding that an ALJ is "required to articulate" the supportability and consistency of a medical opinion in determining that opinion's persuasiveness); *Vazquez v. Kijakazi*, No. 20-cv-30176, 2022 WL 952764, at *12 (D. Mass. Mar. 30, 2022) (citation omitted) ("The new regulations direct an ALJ to explain how he or she considered the supportability and consistency factors when evaluating medical opinions and making the disability determination.").

Regarding the supportability factor, ALJs are required to weigh medical opinions keeping in mind that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). As for the consistency factor, an ALJ must examine whether an opinion is consistent with the record as a whole. *See* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2); *see also Tucker v. Kijakazi*, No. 21-cv-10317, 2022 WL 18032978, at *13 (D. Mass. Sept. 30, 2022) (internal quotation marks and citations omitted) ("The consistency factor addresses the opinion's consistency with all of the evidence from medical and nonmedical sources.").

Here, the Court limits its review to the two medical opinions challenged by Plaintiff, and concludes that the ALJ did not err in his evaluation, which was supported by substantial evidence.

The ALJ found the Adams/Kisch opinion was "of little persuasive value" because it lacked both supportability and consistency. [R. 24]. As for supportability, the ALJ noted that there was "little support for or explanation" for the opined limitations, and "the opinion relies on

criteria that are no longer in effect." [R. 24]. Regarding consistency, the ALJ found that the record evidence did not support the "extreme limitations in social functioning or any episodes of decompensation." [R. 23–24].

By contrast, the ALJ found Dr. Keuthen's opinion "persuasive," concluding that her opined limitations were both consistent and supportable.[17] [R. 23–24]. Specifically, the ALJ found the opinion supportable given Dr. Keuthen's citation "to specific instances in the record to support her analysis" and "consistent with and supported by the majority of the objective evidence." [R. 23–24].

Plaintiff argues the ALJ erred in both his supportability and consistency findings regarding Therapist Adams' and Dr. Kisch's opinion. [ECF No. 12 at 17]. Plaintiff contends that their opinion was supportable given the explanation tacked on at the end of the opinion. [Id.]. Plaintiff further argues that the opinion corresponds "exactly with the current listings" and that it undermines the ALJ's instant RFC assessment. [Id.].

Neither argument is persuasive. The ALJ explained at step three that Plaintiff did not satisfy the listings, and Plaintiff has not challenged that assessment on appeal. [R. 19–21]. Moreover, the ALJ was entitled to weigh the evidence in the manner he did, and the Court declines Plaintiff's invitation to simply reweigh the evidence and/or disturb the ALJ's assessment of supportability and consistency. See Seavey, 276 F.3d at 10 ("[T]he responsibility for weighing conflicting evidence, where reasonable minds could differ as to the outcome, falls on the Commissioner and his designee, the ALJ.").

_____

[17] The ALJ mistakenly refers to Dr. Keuthen as Dr. Kathleen. See [R. 23–24].

The sole argument that Plaintiff advances with respect to the ALJ's evaluation of Dr. Keuthen's opinion is that contrary to "the purpose of the Social Security program [and] . . . the logical outcome of the regulations," the ALJ has overrelied on Dr. Keuthen's opinion.  [ECF No. 12 at 17].   Plaintiff, however, fails to specifically address the ALJ's supportability and consistency findings.  [*Id.* at 17–18].  Moreover, and even more significantly, Plaintiff ignores that the 2017 regulations eliminated any hierarchy among treating versus non-treating and non-examining opinions.  Accordingly, the ALJ here was permitted to rely on the opinion of state agency physician, Dr. Keuthen, provided that the ALJ found that opinion to be more supportable or consistent than the other medical opinions—which he did.  *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a); *see also Devine v. Kijakazi*, 627 F. Supp. 3d 10, 23 (D. Mass. 2022) (citing *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 5854 (S.S.A. Jan. 18, 2017)) ("ALJ's evaluation of medical opinion is supported by substantial evidence so long as one of the reasons [supportability or consistency] given by the ALJ is proper and adequately supported."); *Richardson*, 565 F. Supp. 3d at 169 (citations omitted) (finding that where an "ALJ found [a medical source's] opinions to be unpersuasive on consistency grounds, which alone would have constituted sufficient grounds for finding the opinions less persuasive than [those of other medical professionals], [the ALJ's] minimal discussion of supportability is sufficient"); *accord Perrino v. Kijakazi*, No. 21-cv-11267, 2023 WL 2743370, at *8 (D. Mass. Mar. 31, 2023) (ALJ's unsupportability finding regarding medical opinion was "alone . . . a sufficient basis" for finding the opinion less persuasive).

For these reasons, the ALJ's evaluation of the challenged medical opinions regarding Plaintiff's mental impairments was supported by substantial evidence.

2.    *The ALJ Did Not Err in Evaluating Plaintiff's Testimony Regarding Her Mental Impairments.*

In his written decision, the ALJ acknowledged Plaintiff's testimony regarding her mental impairments and their limitations and found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms."[18]  [R. 22].  The ALJ, however, also found that Plaintiff's "statements concerning the intensity, persistence and limiting effects" were "not entirely consistent with the medical evidence and other evidence in the record."  [R. 22].

Plaintiff argues simply that the ALJ erred in evaluating her testimony as to her pain and symptoms based on his misevaluation of the medical opinion evidence, namely the opinions discussed above from Therapist Adams and Dr. Kisch and from Dr. Keuthen.  [ECF No. 12 at 17–18].  The Commissioner counters that the ALJ properly evaluated the challenged opinion evidence, and notes the additional findings the ALJ made to support his assessment of Plaintiff's testimony.  [ECF No. 17 at 11–12].

"[A]n ALJ must consider a claimant's subjective allegations of functional limitations, but [he] is not required to take those allegations at face value and may reject them where they are unsupported by the medical evidence, treatment history, and activities of daily living."  *Richards v. Kijakazi*, 554 F. Supp. 3d 242, 252 (D. Mass. 2021) (citing *Frustaglia v. Sec'y of Health & Hum. Servs.*, 829 F.2d 192, 194–95 (1st Cir. 1987); *Avery v. Sec'y of Health & Hum. Servs.*, 797

---

[18] Specifically, the ALJ acknowledged record evidence demonstrating that Plaintiff reported "sadness, irritability, isolation, low energy, and poor concentration" to her therapist during "the last few months of 2020," continuing into 2021, and up through the date of the hearing.  [R. 22–23].  Additionally, the ALJ noted evidence that during the relevant period, Plaintiff "described panic attacks and [difficulty] finding the correct dosage and mixture of medication to manage her symptoms," along with low motivation and agoraphobia.  [R. 23].

F.2d 19, 22–23 (1st Cir. 1986); *Winn v. Heckler*, 762 F.2d 180, 181 (1st Cir. 1985); and 20

C.F.R. §§ 404.1529, 416.929). "In evaluating a claimant's symptoms, the ALJ first 'consider[s]

whether there is an underlying medically determinable physical or mental impairment(s) that

could reasonably be expected to produce' those symptoms, and then 'evaluate[s] the intensity

and persistence of those symptoms to determine the extent to which the symptoms limit an

individual's ability to perform work-related activities.'" *Stafford v. Saul*, 564 F. Supp. 3d 1, 7

(D.N.H. 2020) (alterations in original) (quoting SSR 16-3p, 2016 WL 1119029, at *4); *see also*

SSR 16-3p, 2017 WL 5180304, at *3 (same).[19]  While the ALJ may "not disregard an

individual's statements about the intensity, persistence, and limiting effects of symptoms solely

because the objective medical evidence does not substantiate the degree of impairment-related

symptoms alleged by the individual," that is "one of the many factors" the ALJ may consider.

*Stafford*, 564 F. Supp. 3d at 7 (quoting SSR 16-3p, 2016 WL 1119029, at *5)*; see also* SSR 16-

3p, 2017 WL 5180304, at *5 (same).

　　　The First Circuit requires ALJs to consider the so-called "*Avery* factors," which are the

"claimant's daily activities, functional restrictions, non-medical treatment, medications and side-

---

[19] The *Stafford* Court cited to the original version of SSR 16-3p, dated March 16, 2016.  *See* 564 F. Supp. 3d at 7 (discussing SSR 16-3p, 2016 WL 1119029, at *4).  On October 25, 2017, however, the SSA "republished" SSR 16-3p, and the operative version is now found at 2017 WL 5180304, as cited above in this order.  In the 2017 republication, the SSA clarified that republished SSR 16-3p simply "changed [its] terminology from 'effective date' to 'applicable date' based on guidance from the Office of the Federal Register" and "updated citations to reflect the revised regulations that became effective on March 27, 2017."  2017 WL 5180304, at *1. The SSA clarified that the "Ruling [was] otherwise unchanged" in its "guidance about how we evaluate statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims under Titles II and XVI of the Social Security Act."  *Id.*  Accordingly, given the identical substantive standards in the two versions, the *Stafford* Court's citation to the 2016 version of SSR 16-3p as opposed to the 2017 version was of no import.

effects, precipitating and aggravating factors, and the nature, location, onset, duration, frequency, radiation, and intensity of the symptoms." *Richards*, 554 F. Supp. 2d at 252 (citing *Avery*, 797 F.2d at 28–29). An ALJ, however, "is not required to discuss each of the *Avery* factors in order to sufficiently support a credibility determination." *Id.* (citing *Foley v. Astrue*, No. 09-cv-10864, 2010 WL 2507773, at * 7 (D. Mass. June 17, 2010). Instead, "[a]s long as the *Avery* factors are explored during the administrative hearing and the ALJ provides specific reasons for any adverse credibility assessment, the ALJ complies with *Avery,* and his findings are entitled to deference." *Stafford*, 564 F. Supp. 3d at 7 (quoting *Tellier v. Comm'r*, No. 17-cv-00184, 2018 WL 3370630, at *7 (D.N.H. July 10, 2018)).

Here, the Court has already determined that the ALJ did not err in evaluating the challenged medical opinion evidence. Accordingly, the ALJ also did not error to the extent that he evaluated Plaintiff's testimony in part based on his assessment of those challenged opinions. Even more significantly, however, Plaintiff fails to acknowledge or challenge the ALJ's multiple additional reasons for discounting her testimony.

More specifically, in discounting Plaintiff's testimony, the ALJ pointed to evidence that Plaintiff's "[m]ental status examinations were consistently noted to be within normal limits," "show[ed] largely normal findings," and "noted cooperative behavior, normal speech, intact thought process, and normal thought content," citing to Therapist Adams' notes from Plaintiff's February to April 2021 visits, and to Plaintiff's March and April 2021 visits with psychiatric mental health nurse practitioner ("PMHNP"), Molly Sonner. [R. 22 (citing R. 731–44, 970–71, 980–81]; *see also* [R. 22 (citing R. 447–50) (Dr. Delahanty's June 2020 record notes that Plaintiff "was negative for dysphoric mood or sleep disturbance and did not appear nervous or anxious")]. Additionally, the ALJ pointed to notes from Plaintiff's June 2021 consultative

examination with psychologist, Dr. Cattanach, along with Therapist Adam's and PMHNP Carla Niro's 2021–2022 progress notes, which generally reflected that Plaintiff was "alert and oriented, cooperative and pleasant, and showed intact memory, normal thought content, coherent thought process, fair to good attention and concentration, and good insight and judgment." [R. 23 (citing R. 582–87, 620–49, 721–814)]. In particular, the ALJ noted that, according to Dr. Cattanach, Plaintiff was able to complete most of her ADLs independently. [R. 23].

Finally, in discounting Plaintiff's testimony, the ALJ cited to Plaintiff's 2022 treatment notes from Therapist Adams, characterizing Plaintiff's depression as "extremely mild" in January 2022, and "mild" in February 2022; finding Plaintiff's thought process, intellectual functioning, memory, and insight were "within normal limits" in May 2022; and noting improvement in Plaintiff's social functioning and depression in June 2022. [R. 23 (citing R. 957, 960, 1002–03, 1022)].[20]

The above unchallenged reasons—individually and in combination—constituted sufficiently specific reasons in support of the ALJ's evaluation of Plaintiff's testimony regarding her mental impairments. *See Bourinot v. Colvin*, 95 F. Supp. 3d 161, 180–81 (D. Mass. 2015) (describing requirements for ALJ in evaluating a claimant's testimony).

---

[20] The Court notes that the ALJ additionally cited to evidence of questionable relevance, including evidence that significantly preceded Plaintiff's August 2020 onset date and the relevant period in this case. Specifically, the ALJ found that the 2017–2019 medical evidence showed "good management of symptoms with medication and . . . mostly normal findings on mental status examinations in the years leading up to her onset date." [R. 22 (citing R. 283–349, 364–84, 397–408) (evidence from September 2017 through November 2019)]. The Court has not relied on the ALJ's citation to this pre-onset date evidence in affirming the ALJ's findings discounting Plaintiff's testimony.

In sum, the ALJ did not err in evaluating the medical opinions and Plaintiff's testimony regarding her mental impairments.

> **D.      The ALJ is Required to Revisit the Vocational Expert ("VE") Testimony on Remand.**

Finally, Plaintiff contends the ALJ erred at step five when he accepted the VE's testimony regarding the requirements associated with the three jobs—linen room attendant, ingredient scaler, and package sealer—that the VE proffered Plaintiff could perform.  [ECF No. 12 at 18–20].  The Court has, however, already ordered remand for consideration of the new evidence and reconsideration of the ALJ's step two and step four findings regarding Plaintiff's physical impairments.  Consequently, the ALJ will also necessarily be required on remand to revisit and reformulate Plaintiff's RFC and the hypothetical posed to the VE as well.  Accordingly, the Court declines to reach this issue.

> **E.      Remand for Further Proceedings is Warranted.**

Plaintiff requests remand for an award of benefits, or in the alternative, a remand for further proceedings.  [ECF No. 12 at 20].  The Commissioner has not addressed Plaintiff's request for an award of benefits.  *See generally* [ECF No. 17].

"Under the Social Security Act, courts are empowered 'to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.'"  *Sacilowski*, 959 F.3d at 437 (citing 42 U.S.C. § 405(g); *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014); and *Seavey*, 276 F.3d at 8–9); *see also Garrison*, 759 F.3d at 1019 (citing *Seavey* and awarding benefits).  "[E]very Court of Appeals has recognized that in appropriate circumstances courts are free to reverse and remand a determination by the Commissioner with instructions to calculate and award benefits."  *Sacilowski,* 959 F.3d at 437 (quoting *Garrison,*

759 F.3d at 1019). "Courts have generally exercised this power when it is clear from the record that a claimant is entitled to benefits." *Id.* (quoting *Garrison*, 759 F.3d at 1019)*; see also Seavey*, 276 F.3d at 11–12.

It is not clear from the record here that the ALJ will be required to find Plaintiff disabled when all of the evidence is properly evaluated.  Moreover, given the existence of the new evidence and the necessity for additional step two analysis on remand, the Court finds there are outstanding issues that must be resolved before a determination of disability can be made, thus precluding an award of benefits.  *See Garrison*, 759 F.3d at 1020 (noting that remand to an ALJ with instructions to calculate and award benefits is appropriate only where "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand").

Accordingly, the Court remands for further proceedings regarding Plaintiff's physical impairments only.[21]  Specifically, on remand, the ALJ is required to:

(1)    consider the new evidence at all steps of the requisite sequential analysis;

(2)    consider in the first instance whether Plaintiff's back/rib condition constitutes a "medically determinable impairment" or MDI;

(3)    if Plaintiff's back/rib condition constitutes an MDI, the ALJ is then required to:

---

[21] For the reasons above, the Court has found no error and affirms the ALJ's findings on the issues pertaining to Plaintiff's mental impairments.  Accordingly, the ALJ need not revisit the mental impairment findings on remand.

      (a)       reconsider whether Plaintiff's back/rib condition constitutes a "severe impairment" and re-evaluate the step three findings pursuant to the relevant listings;

      (b)       regardless of severity, reassess Plaintiff's RFC at step four in light of any limitations associated with Plaintiff's back/rib impairment; and

      (c)       reconsider the step five findings in light of the reformulated RFC, including revision to the VE hypothetical.

## IV.    CONCLUSION

For the reasons stated herein, Plaintiff's motion to reverse the decision of the Commissioner, [ECF No. 11], is GRANTED IN PART and DENIED IN PART.  The Commissioner's motion to affirm, [ECF No. 16], is GRANTED IN PART and DENIED IN PART.  Pursuant to sentence four of section 405(g), the case is remanded to the Commissioner for further proceedings consistent with this Order.

      **SO ORDERED.**

December 2, 2024                                        */s/ Allison D. Burroughs*

                                              ALLISON D. BURROUGHS
                                              U.S. DISTRICT JUDGE